**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

GENOSOURCE, LLC,

  Plaintiff/Counter-Defendant,

vs.

INGURAN, LLC, *d/b/a* SEXING
TECHNOLOGIES,

  Defendant/Counter-Plaintiff.

_____

INGURAN, LLC, *d/b/a* SEXING
TECHNOLOGIES,

  Third-Party Plaintiff,

vs.

HAWKEYE BREEDER SERVICES,
INC.,

  Third-Party Defendant.

No. 18-CV-113-CJW-KEM

**MEMORANDUM OPINION
AND ORDER**

_____

**TABLE OF CONTENTS**

I.  BACKGROUND .................................................................. 3

II.  SECTION 1653 AND RULE 15 ....................................................... 5

III.  JUDICIAL ADMISSIONS ............................................................. 14

IV.  RELATION BACK ................................................................... 17

V.     CONCLUSION ...................................................................24

This matter is before the Court on GenoSource, LLC's ("plaintiff") Motion for Leave to File Amended Complaint (Doc. 112), and on plaintiff's amended Motion for Leave to File Amended Complaint (Doc. 143). Inguran, LLC, *doing business as* Sexing Technologies, timely resisted both motions (Docs. 117, 166), and plaintiff timely filed replies to both motions to amend (Docs. 130, 172). On April 11, 2019, the Court ruled on plaintiff's amended Motion for Leave to File Amended Complaint (Doc. 143) in part and held the motion in abeyance in part. *GenoSource, LLC v. Inguran, LLC*, No. 18-CV-113-CJW-KEM, 2019 WL 2041661 (N.D. Iowa Apr. 11, 2019). The Court also held plaintiff's first motion to amend (Doc. 112) in abeyance. *Id.* In that same Order, the Court set a briefing schedule to permit the parties to address certain issues. *Id.*, at *7. Plaintiff and defendant timely submitted their supplemental briefs and accompanying exhibits in support. (Docs. 188, 190, 198, 199, 208).

Also before the Court is the issue of whether diversity jurisdiction is proper in this case. The Court issued a Show Cause Order directing the parties to address whether the Court should dismiss this case for lack of jurisdiction. (Docs. 137, 161). The same briefs enumerated above also address the issues raised in the Show Cause Order. Defendant Hawkeye Breeder Services, Inc. ("Hawkeye") was not required to file any pleadings in connection with the issues currently before the Court, and Hawkeye opted not to file any pleadings. On May 17, 2019, the Court heard oral argument on the pending motions to amend and on the Court's Show Cause Order. Each party to this action was represented at the hearing. For the following reasons, plaintiff's Motion for Leave to File Amended Complaint (Doc. 112) is **denied**, and plaintiff's amended Motion for Leave to File Amended Complaint (Doc. 143) is **denied**. Plaintiff's complaint (Doc.

1) is **dismissed**. *See People of United States ex. rel. Kelly v. Bibb*, 255 F.2d 772 (7th Cir. 1958) (distinguishing between dismissing a complaint and dismissing an action).

## I.    BACKGROUND

The Court previously set out a brief summary of the proceedings in this case, as those proceedings pertain to the current motions and jurisdictional issue. A portion of that summary is repeated here.

> Plaintiff filed its original complaint on October 25, 2018, which asserted a single count of conversion. (Doc. 1). In support of invoking the diversity jurisdiction of this Court, plaintiff pled that the parties were completely diverse and that the amount in controversy was in excess of $75,000.00. (*Id.*, at 2). In both its answer and amended answer, defendant "admit[ted] [p]laintiff's allegation of diversity jurisdiction solely for the purposes of this proceeding." (Docs. 83, at 3; 113, at 3). The Court, however, *sua sponte* raised a concern about whether diversity jurisdiction exists. *See White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994) (holding that even when "the parties did not raise any jurisdictional issues [the] court is obligated to raise such jurisdictional issues if it perceives any" (internal quotation marks and citation omitted)). The Court required the parties to provide more information about their citizenship, and it appears that there is a legitimate question as to whether diversity jurisdiction exists.[1] (*See* Docs. 134, 136 (purporting to identify members of plaintiff's and defendant's companies that are citizens of the same state)). . . .
>
> Plaintiff filed its first motion to amend, which seeks to add new common law claims, before any question about jurisdiction arose. (*See* Doc. 112-1). After the Court raised concerns about whether diversity jurisdiction exists, plaintiff filed an amended motion to amend its complaint in an effort to assert federal question jurisdiction. The amended motion seeks to add, among other claims, two claims based on federal statutes, and plaintiff seeks to invoke the Court's federal question jurisdiction based on the addition of the two federal claims. (Docs. 143, at 2; 143-1, at 3, 42-48).

---

[1] Although defendant asserts that recent discovery has "conclusively" established that diversity jurisdiction is lacking (Doc. 166, at 2), plaintiff has not indicated agreement, and the Court has yet to rule on the issue.

*GenoSource*, 2019 WL 2041661, at *1 (footnote in original).

In the Court's previous Order, the Court noted that "[p]laintiff's motions to amend are brought under Federal Rule of Civil Procedure 15(a)(2)," but that "defendant's resistance to the plaintiff's amended motion is argued under both Rule 15 and Title 28, United States Code, Section 1653." *Id.*, at *2. In the previous Order, the Court stated that it would consider whether either Rule 15 or Section 1653 would permit plaintiff to amend its complaint. *Id.* The Court ultimately determined "that plaintiff cannot properly amend its complaint under Section 1653 to assert federal question jurisdiction based on the addition of the two new federal claims." *Id.*, at *5 (footnote omitted). The Court denied plaintiff's amended motion under Section 1653. *Id.*

The Court proceeded, however, to consider whether plaintiff could properly amend its complaint under Rule 15. The Court found that plaintiff's second motion to amend should be granted on the merits under Rule 15(a)(2), but the Court held the motion in abeyance. In doing so, the Court stated as follows, with respect to the second motion:

> It is unclear to the Court whether the amendments plaintiff seeks would relate back to the date of filing the initial complaint under Rule 15(c). If the amendments would relate back, perhaps those amendments would resolve any jurisdictional issues that may exist. If they would not relate back, the Court's jurisdiction to hear this case may be wholly lacking. The Court has set a briefing schedule to address the current jurisdictional issues, and the Court will defer ruling on plaintiff's amended motion under Rule 15 until after the parties file their briefs.

*Id.*, at *7. The Court directed plaintiff and defendant to brief the issue of whether the amended complaint would relate back to the date of the original complaint under Rule 15(c), and the parties did so. The relation back issue is the only issue remaining to be considered under plaintiff's amended motion, and the Court will now address that issue, as well as the parties' arguments surrounding the Court's authority to rule, and the arguments raised in response to the Show Cause Order.

## II. SECTION 1653 AND RULE 15

Defendant offers two separate arguments that address ruling under Rule 15. First, defendant argues that the Court lacks the authority to rule on plaintiff's motions to amend under Rule 15 because, defendant reasons, the Court is wholly without subject matter jurisdiction, which renders the Court incapable of taking any action other than dismissing the case. (Doc. 198, at 12-16). In support, defendant cites to numerous out of circuit cases that, defendant argues, stand for the proposition that a court cannot rule on a Rule 15 motion to amend if the Court lacks subject matter jurisdiction, even if the proposed amendments would cure the jurisdictional defect. Defendant does not, however, cite to any authority from the Eighth Circuit Court of Appeals to support that proposition.

Defendant cites to only two Eighth Circuit cases in discussing the Court's authority to rule under Rule 15. The first, *Associated Insurance Management Corp. v. Arkansas General Agency, Inc.*, 149 F.3d 794, 796-97 (8th Cir. 1998), is cited for the proposition that a "district court cannot retroactively create diversity jurisdiction if it did not exist when the complaint was filed." (Doc. 198, at 13). Aside from the fact that, here, the Court is presented with a situation seeking to establish federal question jurisdiction, not diversity jurisdiction, *Associated Insurance Management* is not on point. That case resulted in dismissal because the Eighth Circuit found that the jurisdictional deficiency was not cured by permitting a non-diverse real party in interest to ratify the lawsuit under Rule 17(a) instead of remaining a party to the lawsuit. 149 F.3d at 797. That situation is markedly different from the situation in this case because plaintiff is not seeking to change the parties to the suit, but, rather, is seeking to change the basis for jurisdiction in this Court.

*Associated Insurance Management* also did not address whether the district court had the authority to rule on the merits of the case. Finally, the holding in *Associated Insurance Management* was narrow and does not encompass the situation at issue here.

The Eighth Circuit held that "[i]f diversity jurisdiction is lacking when a lawsuit is started . . . it cannot be created later when defendants use third-party practice to sue a nondiverse real party on their counterclaim." *Id.* at 798 (citation omitted). Plaintiff is not seeking to use third-party practice to cure the jurisdictional deficiencies in this case. *Associated Insurance Management* is, thus, of no benefit in determining either the merits of the current issues, or in determining whether the Court has the authority to reach the merits of the issues currently before the Court.

Next, defendant cites to *Scottsdale Insurance Co. v. Universal Crop Protection Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010), and *Fenner v. Wyeth*, 912 F. Supp. 2d 795, 801 n.6 (E.D. Mo. 2012), as part of defendant's argument that jurisdiction cannot be created retroactively. (Doc. 198, at 13-14). *Scottsdale* addressed whether the amount-in-controversy requirement set forth in Title 28, United States Code, Section 1332(a) was satisfied and did not address a district court's authority to rule when subject matter jurisdiction is uncertain. Again, the Court notes that prohibiting the retroactive creation of jurisdiction does not necessarily equate to prohibiting consideration of a motion that could cure jurisdictional deficiencies, if granted. *Scottsdale* is, thus, not relevant to a determination of the Court's authority to rule.

*Fenner* cites to the same provision in *Scottsdale* that the Court has rejected as being irrelevant. The cited portion of *Fenner* addresses facts specific to that case. Those facts are not implicated here. Although *Fenner* does go on to discuss the limited circumstances in which a jurisdictional defect can be cured, the discussion addresses the validity of a judgment when the jurisdictional defect has been cured by the time of final judgment. 912 F. Supp. 2d at 802-03. This case has not reached the final judgment stage, and the circumstances addressed in *Fenner* are not otherwise applicable to this case.

The District of Delaware recently addressed a case with a nearly identical procedural background as the case now before this Court. *See Cliffs Nat. Res. Inc. v.*

*Seneca Coal Res., LLC*, No.17-567, 2018 WL 2012900 (D. Del. Apr. 30, 2018) ("*Cliffs*"). The District of Delaware found that it "clearly lack[ed] diversity jurisdiction," and, consequently, was without authority to consider plaintiff's motion to amend its complaint. *Id.*, at *2, *5. *Cliffs* is on point, and defendant's reliance on *Cliffs* is well placed. *Cliffs*, however, was issued from the District of Delaware, and is therefore out of circuit persuasive authority. The Eighth Circuit Court of Appeals, in contrast, has reached a different conclusion. *See Sanders v. Clemco Indus.*, 823 F.2d 214, 215-17 (8th Cir. 1987). This Court is bound by the Eighth Circuit's decision and, thus, this Court cannot apply the same rationale as was applied in *Cliffs*.

The Court has already addressed its authority to consider plaintiff's motions to amend under Rule 15 in light of the jurisdictional defect. *See GenoSource*, 2019 WL 2041661, at *6. In doing so, the Court offered the following discussion:

> The Eighth Circuit Court of Appeals has not ruled on the issue of whether a motion to amend a complaint under Rule 15(a)(2) may properly be granted when the amendments sought to be made include asserting new federal claims that would provide the basis for federal question jurisdiction in a case where the previous jurisdictional basis—diversity jurisdiction—has been called into doubt. The Eighth Circuit has, however, ruled that even when diversity jurisdiction was lacking, a district court's denial of a motion to amend a complaint under Rule 15(a)(2) amounted to an abuse of discretion. *Sanders*, 823 F.2d at 215-17. *Sanders* is relevant to the extent it instructs that a court may properly consider a Rule 15(a)(2) motion to amend a complaint even where jurisdiction has not been established. *See also Local 179, United Textile Workers of Am., AFL-CIO v. Fed. Paper Stock Co.*, 461 F.2d 849, 851 (8th Cir. 1972) ("When necessary to establish jurisdiction[,] leave to amend should be freely granted under [Rule] 15(a)."). *Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826, 832-33 (1989) (holding that even when a court lacks jurisdiction, it may consider a Rule 21 motion to dismiss non-diverse parties to establish complete diversity). The Court will, thus, consider the merits of plaintiff's amended motion to amend.

*Id.* In the absence of Eighth Circuit or United States Supreme Court authority to the contrary, this Court is bound by *Sanders'* implicit holding that a court may properly consider the merits of a Rule 15(a)(2) motion to amend, even in the absence of jurisdictional certainty.[2] The out of circuit authority that defendant cites is merely persuasive and cannot overcome *Sanders*, to the extent *Sanders* is binding on this Court. The Court thus maintains that under current Eighth Circuit authority, the Court may properly consider the merits of plaintiff's motion.

Defendant next argues that Section 1653 serves as a limitation on Rule 15 and that, consequently, the Court's inquiry should have ended when the Court determined that Section 1653 does not provide a legal basis for plaintiff's proposed amendments. (Doc. 198, at 16). The Court disagrees. Defendant asserts that "Congress and the [United States] Supreme Court have made it clear that [Section 1653] expressly limits the type of amendments a plaintiff may make." (*Id.*). In support, defendant cites to *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. at 831. (*Id.*). The paragraph defendant cites to, however, does not support defendant's interpretation of Section 1653 as limiting Rule 15. Further, the cited paragraph is taken out of context. When read in context, it becomes more apparent that defendant's interpretation is incorrect.

The relevant portions of *Newman-Green*, in full, read as follows:

> Title 28[, United States Code, Section] 1653, enacted as part of the revision of the Judicial Code in 1948, provides that "[d]effective allegations

---

[2] Later in its brief, defendant states that the parties in *Sanders* "were in fact diverse, which meant that the court had subject matter jurisdiction all along." (Doc. 198, at 18). The Eighth Circuit, however, made no such finding. Instead, the Eighth Circuit explicitly found "that the pleadings in the present case do not establish diversity jurisdiction," and the Eighth Circuit did not go on to make any factual findings as to whether the plaintiff would be able to establish diversity jurisdiction on remand. *Sanders*, 823 F.2d at 216. The court merely found that the plaintiff should be permitted the opportunity to amend his complaint. *Id.* at 216-17. If defendant's assertion that the parties were diverse were true, perhaps *Sanders* would stand for a different proposition. Defendant is mistaken, however, and the Court's conclusions remain firm.

of jurisdiction may be amended, upon terms, in the trial or appellate courts." At first blush, the language of this provision appears to cover the situation . . . where the complaint is amended to drop a nondiverse party in order to preserve statutory jurisdiction. But [Section] 1653 speaks of amending "*allegations* of jurisdiction," which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves. Under this reading of the statute, which we believe is correct, . . . [Section 1653] does not apply to the instant situation, where diversity jurisdiction does not, in fact, exist.

This interpretation of [Section] 1653 is consistent with the language of its predecessor statute, enacted in 1915, which expressly limited jurisdictional amendments to cases in which diversity jurisdiction "in fact existed at the time the suit was brought or removed, though defectively alleged." 28 U.S.C. § 399 (1946). There is nothing in the 1948 legislative history to indicate that, in changing the wording of this statute, Congress intended to abandon the limitation just quoted. On the contrary, the only legislative guide available—the Revision Note to [Section] 1653—explains that the predecessor statute was changed solely to expand the power to cure defective allegations of jurisdiction from diversity cases to all cases. Historical and Revision Notes to 28 U.S.C. § 1653. Other than that, "[c]hanges were made in phraseology. Furthermore, every Court of Appeals that has considered the scope of [Section] 1653 has held that it allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts. We decline to reject this longstanding interpretation of the statute.

490 U.S. at 831-32 (alterations and emphasis in original) (footnotes omitted).

This Court reads *Newman-Green* as addressing limitations on the reach of Section 1653, but the Court does not read *Newman-Green* as holding that Section 1653 is, itself, a statutory limitation. The *Newman-Green* Court specifically found that because Section 1653 only permits *allegations* of jurisdiction to be amended, Section 1653 would not support dropping a non-diverse party to cure a defective jurisdictional *fact*. *Id.* at 831. In reaching this holding, the United State Supreme Court necessarily found that dropping a non-diverse party amounted to changing the jurisdictional *facts* of a case brought under diversity jurisdiction. If defendant's interpretation were accurate that Section 1653

"expressly limits the types of amendments a plaintiff may make" (Doc. 198, at 16), then *any* amendments made under the Federal Rules of Civil Procedure that changed the jurisdictional *facts* of a case would be impermissible.

The Supreme Court has, however, declined to adopt this interpretation. Immediately after addressing the reach of Section 1653, the Supreme Court went on to address whether the amendment sought could be properly made under Federal Rule of Civil Procedure 21. *Newman-Green*, 490 U.S. at 832. The Supreme Court could not have done so if Section 1653 served as a limitation on jurisdictional amendments as a whole.[3] Even though Rule 21 is of a different nature than Rule 15, it follows that if Section 1653 were an overarching limitation, as defendant contends, neither Rule 15 nor Rule 21 could provide a basis for amendments that would be impermissible under Section 1653. Under binding Supreme Court authority, this interpretation cannot stand. Not only did the *Newman-Green* Court proceed to address an amendment under Rule 21 when

---

[3] The *Newman-Green* Court found that its interpretation of Section 1653 was "consistent with the language of its predecessor statute, enacted in 1915, which expressly *limited* jurisdictional amendments . . . ." 490 U.S. at 831 (emphasis added). The *Newman-Green* Court went on to hold that "nothing in the 1948 legislative history" indicates that Congress intended to abandon that limitation. *Id*. These findings strengthen this Court's determination that the *Newman-Green* Court was speaking in terms of the limitations of Section 1653's reach, and the reach of its predecessor statute. The Federal Rules of Civil Procedure were not adopted until 1937, and no uniform rules of civil procedure were in use in cases at law in 1915. *In re Rules of Procedure*, 302 U.S. 783 (1937) (available in the official print version of the United States Reporter and at https://heinonline.org/HOL/Page?collection=usreports&handle=hein.usreports/usrep302&id=861&men_tab=srchresults). As a result, the 1915 statute did not contemplate whether the Federal Rules of Civil Procedure could provide alternative bases for jurisdictional amendments, nor were the Federal Rules an available vehicle for making jurisdictional amendments. The Supreme Court recognized the limiting nature of the predecessor statute, however, then went on to address whether an amendment to cure jurisdiction could properly be made under Rule 21. *Newman-Green*, 490 U.S. at 832. Thus, the Supreme Court recognized that the adoption of the Federal Rules of Civil Procedure, which came *after* the 1915 statute, could provide alternative bases, in the right case, for litigants to amend their pleadings to establish jurisdiction and that the 1915 statute did not foreclose this possibility.

the amendment could not stand under Section 1653, but the Court determined that the amendment under Rule 21 was proper. *Id.* at 837-38. In doing so, the Court recognized that even if an amendment lacks support under Section 1653, other procedural mechanisms could provide a basis for the very same amendment. Thus, Section 1653 cannot be read as blanket limitation on jurisdictional amendments to pleadings.[4]

Nor does this Court read Section 1653 as always imposing a limitation on the reach of Rule 15. The effect of Rule 15, in this case, would accomplish the same result as the Rule 21 amendment in *Newman-Green*. As the Court explained in its prior Order, the addition of the two new federal claims and the assertion of federal question jurisdiction amount to the addition of new jurisdictional facts. *See GenoSource*, 2019 WL 2041661, at *3. Likewise, dropping the jurisdictional spoiler in *Newman-Green* served to modify the jurisdictional facts of the case. 490 U.S. at 831. *Newman-Green* counsels that although Section 1653 cannot support amendments to jurisdictional facts—such as the amendments sought to be made in this case—those same jurisdictional facts can properly be amended if they find support in other authority. The Court notes that the relevant authority that may permit jurisdictional facts to be amended in this case is Rule 15, as opposed to Rule 21. This, however, does not defeat *Newman-Green*'s applicability because the central issue in both cases is amending jurisdictional facts. Thus, *Newman-Green* permits this Court to consider whether plaintiff may properly amend its complaint under Rule 15 even though plaintiff may not properly amend under Section 1653.

---

[4] This Court finds it noteworthy that the Supreme Court recognized Rule 21 as its own separate and distinct exception to the rule that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green*, 490 U.S. at 830 (citation omitted). In stating that Section 1653 and Rule 21 are each *separate* exceptions to the generally recognized time-of-filing rule, the Court recognized that an amendment may be supported under either the statute or the Rule, but not the other. Thus, it follows that neither Section 1653 nor Rule 21 serves as a limitation on the reach of the other, to the extent the provisions permit amendments to cure jurisdictional defects.

Finally, defendant argues that three cases support defendant's argument that this Court can "grant [plaintiff's] motion for leave only if doing so [would be] proper under Section 1653." (Doc. 198, at 19). Defendant's reliance upon each case is misplaced. First, defendant argues that *Sanders v. Clemco Industries*, 823 F.2d 214 (8th Cir. 1987), supports defendant's position because "the parties were in fact diverse, which meant that the court had subject matter all along." (Doc. 198, at 18). Upon this basis, defendant asserts that the amendments sought in *Sanders* were merely "technical" and that "the court had subject matter jurisdiction over the case despite the pleading defects." (*Id.*).

As noted above, the Eighth Circuit made no such finding of jurisdiction. To the contrary, the Eighth Circuit found that diversity jurisdiction had not been established, and the Eighth Circuit did not reference any facts that could lead to the establishment of diversity jurisdiction. *Sanders*, 823 F.2d at 216. Thus, defendant's conclusion that the amendment was permitted under Rule 15(a) only because it likewise would have been permitted under Section 1653 simply misreads the facts of the case. Additionally, *Sanders* makes no reference to Section 1653, which, if anything, indicates that Rule 15(a) need not be read together with Section 1653. [5]

Defendant next cites to *Local 179, United Textile Workers of America, AFL-CIO v. Federal Paper Stock Co.*, 461 F.2d 849 (8th Cir. 1972) ("*Federal Paper Stock*"), arguing that this Court, in its prior Order in this case, misapplied *Federal Paper Stock*. This Court disagrees. As an initial matter, defendant seems to imply that the Court relied more extensively on *Federal Paper Stock* than the Court actually did. (*See* Doc. 198, at 18-20). The Court relied on *Federal Paper Stock* only as ancillary support for the

---

[5] During oral argument, defendant argued that the Eighth Circuit Court of Appeals has not read Section 1653 as a limitation on Rule 15 only because the Eighth Circuit has not been presented with a case in which Section 1653 and Rule 15 were both implicated. Defendant is correct that the Eighth Circuit has not been presented with such a case. In light of this Court's analysis under *Newman-Green*, however, defendant's argument is unavailing.

proposition that Rule 15(a) can provide a basis to amend a complaint to cure a constitutional infirmity. *GenoSource*, 2019 WL 2041661, at *3. *Federal Paper Stock* was not the Court's only basis for concluding that the Court can properly consider plaintiff's motions to amend under Rule 15, nor does *Federal Paper Stock* defeat the Court's conclusion.

In *Federal Paper Stock*, there was uncertainty as to whether a union had standing to sue on behalf of female employees. 461 F.2d at 850. The Eighth Circuit found it unnecessary to resolve this issue because even though the constitutional question presented itself, the court held that "[w]hen necessary to establish jurisdiction[,] leave to amend should be freely granted under [Federal Rule of Civil Procedure] 15(a)." 461 F.2d at 851. Thus, although the issue in *Federal Paper Stock* was a standing issue, the Eighth Circuit still considered the propriety of an amendment to cure a jurisdictional defect, and the Eighth Circuit found that an amendment can cure such defects, in the right circumstances. This is the proposition for which the Court cited *Federal Paper Stock*, and the Court does not find that citation to be misplaced.

Finally, defendant cites to *Quality Refrigerated Services, Inc. v. City of Spencer*, 908 F. Supp. 1471 (N.D. Iowa 1995) ("*Spencer*"), as providing support for defendant's position that Rule 15 is limited by Section 1653. (Doc. 198, at 19). *Spencer*, however, is inapplicable to the consideration of whether Section 1653 limits Rule 15. This Court did not address Section 1653 in its *Spencer* decision, nor did the Court contemplate whether Section 1653 serves to limit Rule 15. Moreover, in this case, the Court did not purport to rely on *Spencer* as providing the Court with authority to consider plaintiff's motions and, to the extent the Court did rely on *Spencer*, that reliance wholly favored defendant. *See GenoSource*, 2019 WL 2041661 at *4. The Court finds it unnecessary to discuss *Spencer* in greater depth here and will address plaintiff's arguments under

*Spencer* below. For these reasons, the Court rejects defendant's arguments that Section 1653 serves to limit Rule 15.

### III.    JUDICIAL ADMISSIONS

Plaintiff first argues that defendant's "binding judicial admissions of jurisdictional facts conferred jurisdiction on the Court and satisfy [plaintiff's] burden to establish jurisdiction." (Doc. 190, at 12). The United States Supreme Court has addressed the issue of whether a court may act on parties' jurisdictional admissions: "Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts [that] show jurisdiction, and the courts may act judicially upon such an admission." *Ry. Co. v. Ramsey*, 89 U.S. 322, 327 (1874). In *Ramsey*, the Court was faced with the unique situation of the evidence supporting federal jurisdiction having been destroyed. *Id.* at 327-28. Thus, if a federal court was to exercise jurisdiction over the case, it would have no choice but to accept the parties' admissions as true. *Id.* Not so, here. Because the evidence regarding jurisdiction exists here and is available, the posture of this case is markedly different from *Ramsey*, and the rule carved out in *Ramsey* is inapplicable here.

Further, even if the Court were inclined to find *Ramsey* applicable to this case, the Court would still decline to act upon defendant's admissions. *Ramsey* is phrased in the permissive. Thus, *Ramsey* holds that a court *may* act upon admissions, but *Ramsey* does not *require* a court to do so. The Court would decline to act upon defendant's admissions, even if the Court found *Ramsey* to be instructive in this case. The reasons for this determination are explained more fully below.

The Supreme Court has explicitly stated that "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ire., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "Thus, the consent of the parties is irrelevant, [and] principles of estoppel do not apply." *Id.* (citations omitted). This Court

recognizes that defendant has repeatedly "admit[ted] [p]laintiff's allegations of diversity jurisdiction solely for the purposes of this proceeding." (Docs. 83, at 2; 113, at 2). Although this is not a direct response to the facts alleged in plaintiff's complaint, the Court interprets this admission as admitting that "the members of [defendant] are citizens of the states of Texas, California, Florida, and Arkansas[,] and the country of Colombia," and that "no member of [defendant] is a citizen of the states of Illinois or Iowa." (Doc. 1, at 2 (quoting paragraph that corresponds with defendant's response, quoted above)). Indeed, this interpretation is consistent with defendant aggressively litigating the merits of this case in this Court. These admissions, however, cannot confer jurisdiction on the Court. The Court has now ascertained, to the best of its ability, that subject matter jurisdiction is, in fact, lacking, and defendant's admissions to the contrary cannot have any effect on that determination.

The Court recognizes the existence of persuasive authority that would hold defendant to its jurisdictional admissions, even though those admissions are apparently inaccurate. *See, e.g.*, *Sparta Ins. Co. v. Hearthside Food Sols., LLC*, No. 1:12-CV-29, 2012 WL 12849919, at *2-3 (W.D. Mich. Dec. 13, 2012) (collecting cases and holding a party's admissions regarding citizenship binding against that party). The Court is unpersuaded by these cases. The Court is required to satisfy itself that jurisdiction exists and, in doing so, the Court instead found that jurisdiction is lacking because plaintiff and defendant both have members who are Illinois citizens. *See White*, 43 F.3d at 376. If the Court were to refuse to acknowledge the evidence defeating diversity jurisdiction, the Court would effectively be relieving itself of its obligation to ensure that jurisdiction is proper. Such a holding would, instead, shift the Court's obligation onto the parties. Shifting the burden onto the parties would permit cases like this one—where the parties

improperly assert the existence of jurisdiction—to proceed because the Court failed to ensure that jurisdiction is proper. The Court declines to reach this holding.[6]

Plaintiff turns to the Fourth Circuit Court of Appeals' holding that "a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) (footnote omitted). Plaintiff urges the Court not to relieve defendant of its jurisdictional admissions because defendant has made no showing that it was "laboring under a mistake" when it admitted to the jurisdictional facts. (Doc. 199, at 3). Plaintiff cites to several cases decided either by the Eighth Circuit or by courts within the Eighth Circuit as support for the idea that defendant's admissions should be considered binding. (Doc. 190, at 13). Plaintiff acknowledges that these cases do not address jurisdictional

---

[6] The Court notes that the Sixth Circuit Court of Appeals has held that a party's admission to a fact necessary to establish subject matter jurisdiction "create[d] federal subject matter jurisdiction." *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986); *see also Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974, 977 (9th Cir. 1978). The Eighth Circuit Court of Appeals has not adopted the *Ferguson* rationale. This Court respectfully disagrees with the *Ferguson* Court because admission of a fact is not tantamount to the fact actually existing at the time a case is filed. Where a party wrongly admits that the parties to the case are completely diverse, the proper remedy cannot universally be to hold that party to its admission and consider subject matter jurisdiction as having been established. To do so would be to extend a federal court's authority beyond the bounds of constitutional and statutory grants of authority and effectively allow parties to establish jurisdiction by consent. A defendant's conduct of inaccurately admitting to the existence of diversity may, in the right case, be subject to alternative types of sanctions, but a court simply lacks the authority to vest itself with subject matter jurisdiction based on an incorrect admission of a fact necessary to establish subject matter jurisdiction. *See Ins. Corp. of Ire., Ltd.*, 456 U.S. at 702-04 (distinguishing between personal jurisdiction and subject matter jurisdiction in the context of considering a jurisdictional fact to have been incorrectly admitted). Finally, the Court notes that *Verzosa* is distinguishable from this case because the evidentiary record in that case supported the admission that was made. 589 F.2d at 977. Here, of course, the record contradicts defendant's admissions.

admissions but argues, nonetheless, that the Court should not permit defendant to now contradict its jurisdictional admissions. (*Id.*).

The Court will not adopt plaintiff's argument. As discussed above, the Court has an independent obligation to verify the existence of jurisdiction, and if the Court were to hold defendant to its admissions, the precedential effect would be to trend toward permitting a court to preside over a case in which subject matter jurisdiction is lacking. The Court thus finds it improper to find that it has jurisdiction over this case by holding defendant to its inaccurate admissions. Moreover, the parties have yet to address whether defendant was "laboring under a mistake," under the standard established in *New Amsterdam*. If plaintiff brings a motion for sanctions, as plaintiff has indicated it may, perhaps defendant's actual knowledge will become relevant at that time, and perhaps the parties will fully address the issue.[7] (*See* Doc. 190, at 15 n.2). Presently, however, the issue need not be considered, and the Court declines to reach the drastic holding that defendant was not "laboring under a mistake" when it made its admissions.

## IV.    RELATION BACK

The Court has already determined that "Rule 15(a)(2) supports plaintiff's [amended] motion." *GenoSource*, 2019 WL 2041661, at *7. Although plaintiff again

---

[7] During oral argument, plaintiff also cited to *Traeger Grills East, LLC v. Traeger Pellet Grills, LLC* ("*Traeger*"), Civ. No. 3:11-CV-536-AC, 2011 WL 5439330, at *6-7 (D. Or. Nov. 9, 2011), for the proposition that it is objectively unreasonable for an entity to be unaware of its own citizenship. More specifically, the *Traeger* court held that it was objectively unreasonable for a party to remove a case to federal court without being aware of its own citizenship. *Id.* The *Traeger* court reached this holding in considering whether to award attorneys' fees and costs as a sanction for defendant improperly removing the case to federal court on the erroneous assertion of diversity jurisdiction. The *Traeger* court did not hold defendant to its assertion of complete diversity and, instead, remanded the case to state court because complete diversity was lacking. *Id.* at *5. Thus, *Traeger* may be relevant to considering the issue of sanctions, should the issue arise, but *Traeger* is not relevant to whether this Court should hold defendant to its judicial admissions.

contends that *Spencer* supports plaintiff's position that amending plaintiff's complaint under Rule 15(a)(2) would permit this Court to exercise jurisdiction, the Court remains firm in its previous conclusions as to *Spencer*.[8] *See GenoSource*, 2019 WL 1210111, at *4.

In its prior Order, the Court addressed *Spencer* in considering whether plaintiff could properly amend under Section 1653. The Court finds the same rationale applicable as to Rule 15(a)(2). The Court will now add that this Court in *Spencer* did not need to reach the relation back issue because the Court concluded that the amendment sought would be futile on the merits. *Spencer*, 908 F. Supp. at 1493. Thus, the Court did not consider the futility issue with respect to Rule 15(c) because the Court denied the motion as futile for a different reason. To read the case as implicitly holding that the amendment would have related back had it not been futile on the merits would be adding to *Spencer* a holding that does not exist and that the *Spencer* Court declined to reach.

The final issue the Court will consider is whether the proposed amendments would relate back to the date the initial complaint was filed. Plaintiff's position is that the amendments do not need to relate back for the Court to properly exercise jurisdiction over this case. In support, plaintiff argues that the Court's earlier exercise of diversity jurisdiction—even though complete diversity is lacking—was proper based on defendant's judicial admissions. Plaintiff reasons that if the Court grants the proposed amendments, the jurisdictional basis would then become federal question jurisdiction. This argument contains two necessary components. First, plaintiff argues that the Court should rely on

---

[8] Plaintiff cites to *Spencer* when arguing that the Court has the authority to consider plaintiff's motions to amend, even in light of the jurisdictional uncertainty. (*See* Doc. 190, at 17-19). The Court has already addressed *Spencer*'s applicability to the Court's authority to consider the motions. The Court is now addressing *Spencer*'s applicability to the merits of amending under Rule 15(a)(2) because in arguing that *Spencer* supports this Court's authority to rule on a Rule 15 motion, plaintiff has implicated *Spencer*'s Rule 15 holding on the merits.

defendant's judicial admissions. The Court has already rejected this argument, and plaintiff's theory, therefore, cannot succeed in its entirety.

The second prong of plaintiff's argument is more properly characterized as seeking leave to file a supplemental pleading under Federal Rule of Civil Procedure 15(d). Plaintiff has not moved under Rule 15(d) and, even if plaintiff had, a successful Rule 15(d) motion would not save plaintiff's complaint. If the Court were to grant a Rule 15(d) motion, the new jurisdictional basis would not relate back, nor does plaintiff argue that the jurisdictional amendments would relate back under this theory.[9] The Court, then, would only have jurisdiction over this case beginning from the date of the supplemental complaint. The parties have not asked the Court to exercise jurisdiction beginning on the date of the supplemental complaint, as opposed to the date the original complaint was filed. The Court will therefore decline to entertain whether this resolution would be proper. Regardless of whether a Rule 15(d) amendment could save jurisdiction at this stage, plaintiff's theory that the amendments need not relate back fails on the assertion that the Court should rely on defendant's judicial admissions.

Plaintiff further argues that although it is unnecessary for the amendments to relate back, relation back would be proper under Rule 15(c). In support, plaintiff relies on Rule 15(c)(1)(B). That provision states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "To arise out of the same conduct, transaction, or occurrence, the claims must be tied to a common core of operative facts." *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010) (citation and

---

[9] The Court's analysis as to whether a Rule 15(d) supplemental pleading would relate back under Rule 15(c)(1)(B) is the same as the Court's analysis as to whether a Rule 15(a)(2) amendment would relate back under Rule 15(c)(1)(B).

internal quotation marks omitted). "An amended [pleading] may raise new legal theories only if the new claims relate back to the original motion by arising out of the same set of facts as the original claims." *Id.* (citation and internal quotation marks omitted). An amended pleading can relate back only in part, while the remaining part will be deemed filed on the date the amended pleading—not the original pleading—was filed. *See Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051 (8th Cir. 2002) (finding that an amended complaint related back to the date the initial complaint was filed as to only two of four newly added claims).

The amendments plaintiff seeks are of two different types. First, plaintiff seeks to add a number of new claims, including two claims based on federal law. Second, plaintiff seeks to use those new federal claims as the basis for asserting federal question jurisdiction. The Court must consider, then, whether the *claims* would relate back and whether the *assertion of federal question jurisdiction* would relate back. The Court finds that the former would relate back but the latter would not.

Plaintiff's argument as to the relation back issue are as follows:

> In the present case . . . [plaintiff's] [c]omplaint has at its core [defendant's] baseless assertion that [plaintiff] is part of the Natures Finest Joint Venture, [defendant's] wrongful exercise of control over [plaintiff's] animals, and "[defendant's] threat to continue extracting genetic product from those animals and selling it without [plaintiff's] consent." The [c]omplaint noted that [defendant] claimed it had rights to control and market [plaintiff's] animals into 2023. And the [c]omplaint asserted that "[defendant's] wrongful exercise of dominion and control over [plaintiff's] genetic materials and *continuing representation to the public that it is authorized to market and sell such materials also threatens to harm [plaintiff's] reputation and goodwill.*"
>
> [Plaintiff's] proposed Lanham Act claim builds on the core fact that [defendant] has been misleading the public that it is authorized to market and sell [plaintiff's] genetic materials, alleging that ". . . [defendant] has undertaken a campaign that is likely to cause confusion as to the origin of [plaintiff's] genetic materials and animals as well as confusion as to the

> sponsorship and approval of [defendant's] commercial activities related to [plaintiff's] animals and genetic materials." The proposed Lanham Act claim points to [defendant's] continued sale of [plaintiff's] semen after [plaintiff] had given notice that it was ending its relationship with [defendant] as generating such consumer confusion. Similarly, where the [c]omplaint alleges that [defendant] converted [plaintiff's] animals and genetic materials and wrongfully claims a superior right to market those materials through 2023, the proposed Sherman Act claim asserts that this same conduct constituted an illegal attempt to lock up animals for the purpose of maintaining [defendant's] monopoly and to discourage other parties from buying semen directly from [plaintiff].

(Doc. 190, at 21-22 (emphasis in original) (citations omitted)). The Court agrees with plaintiff's argument. Plaintiff accurately illustrates that the proposed Lanham and Sherman Act claims arose out of the same set of facts as the original complaint. Specifically, the Court finds that the Lanham and Sherman Act claims stem from defendant's allegedly wrongful conversion of the animals and their genetic material, and from defendant's alleged representations to the public that defendant was authorized to market and sell the genetic materials. The Court therefore concludes that the Lanham and Sherman Act claims, as pled in the amended complaint that is appended to plaintiff's amended motion to amend (Doc. 143-1), would relate back under Rule 15(c) to the date the original complaint was filed.

Plaintiff does not, however, argue that the new assertion of federal question jurisdiction would relate back. The fact of federal question jurisdiction arises "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). A plaintiff can "avoid federal jurisdiction by exclusive reliance on state law." *Id.* (footnote omitted). In this case, then, the Court must examine the original complaint to determine whether the "fact" of an issue of federal law can be found such that the new assertion of federal question jurisdiction can relate back to the date of the original complaint.

The original complaint contains no indication that an issue of federal law is implicated, and the complaint does not otherwise plead federal question jurisdiction.[10] Indeed, from all appearances, the original complaint rests entirely on state common law. The Court thus concludes that the assertion of federal question jurisdiction, as pled in the second proposed amended complaint (Doc. 143-1), cannot relate back to the date the original complaint was filed.

In its first Order, the Court declined to address the merits of plaintiff's first motion to amend, and the Court likewise declines to do so in this Order. Plaintiff suggests that if the Court finds that the amended complaint appended to the amended motion to amend (Doc. 143-1) would not relate back under Rule 15(c), the Court could grant plaintiff's first motion to amend, then grant plaintiff's second motion to amend. (*See* Doc. 190, at 23 n.4). Plaintiff reasons that this solution would permit the second amended complaint to relate back to the date of the original complaint. The Court disagrees.

If the Court were to avail itself of plaintiff's proposal, the relation back issue would be shifted from the second motion to amend to the first motion to amend, but the legal analysis would remain the same. The issue is not whether the additional facts and claims would relate back. Rather, the issue is whether the new jurisdictional basis would relate back. Even if the Court were to grant the first motion to amend, the new jurisdictional basis alleged in the second proposed complaint would not relate back to the date of the original complaint. Granting either motion to amend, then, would be futile. Likewise, granting both motions to amend would be futile because the new jurisdictional allegations, which are key, would not relate back.

---

[10] Although the Court's analysis under Rule 15(c), with respect to the assertion of federal question jurisdiction, shares some overlap with the Court's analysis under Section 1653, the Court reiterates that the inquiries are separate and distinct.

Finally, the Court notes that if it were to grant plaintiff's second motion to amend as to the substantive claims, but deny the motion as to the jurisdictional allegations, plaintiff could be tempted to bring a third motion to amend, which would seek to add the new jurisdictional allegations. Theoretically, the new federal question jurisdiction allegations contained in the third proposed complaint would then relate back based on the newly added federal claims. The Court recognizes that an amended complaint, once filed, becomes the operative complaint. Here, however, to permit such a course of action would be to permit plaintiff to cure an incurable jurisdictional deficiency by piggybacking off the Court's Orders. That practice will not render jurisdiction proper in this case.

The Court has addressed the parties' arguments regarding potential methods of curing the jurisdictional deficiencies in this case, and the Court finds that no theory plaintiff has proffered can support the exercise of subject matter jurisdiction. Further, the Court has rejected plaintiff's theories as to why plaintiff should be permitted to amend its complaint, and the Court finds that any amendments would be futile because the Court would still be bound to dismiss plaintiff's complaint. Both motions to amend (Docs. 112, 143) are **denied**, and the Court must **dismiss** the complaint for lack of jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

The Court previously instructed the parties to brief the issue of whether a finding of federal question jurisdiction would cure any jurisdictional deficiencies that may exist in the Court's prior Orders. (Docs. 161; 181, at 16). Because the Court has concluded that federal question jurisdiction is lacking, however, this issue is not ripe for review. Should a litigant in a separate action, or in this action, at some point seek to invoke or overcome this Court's previous Orders in this case, the issue may then be ripe for review. Presently, however, the Court will not address the question.

## V.     CONCLUSION

For the reasons set forth in this Order and in the Court's previous Order, available at *GenoSource, LLC v. Inguran, LLC*, No. 18-CV-113-CJW-KEM, 2019 WL 2041661 (N.D. Iowa Apr. 11, 2019), plaintiff's motions to amend (Docs. 112, 143) are **denied**, and plaintiff's complaint (Doc. 1) is **dismissed**.  If no action is taken in this case for a period of thirty (30) continuous days, the Clerk of Court is directed to dismiss this case in its entirety, unless a new motion, or motions, are filed after the date of this Order, and that new motion has yet to be ruled on.  The Clerk of Court is directed to terminate all outstanding motions and cancel all pending deadlines.

**IT IS SO ORDERED** this 22nd day of May, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa